HOFFMAN, Appellant, v. ST. LOUIS REFRIGERATOR & COLD STORAGE COMANY, Respondent.

St. Louis Court of Appeals, November 13, 1906.

CONTRACTS: Consideration: Nudum Pactum. A contractor had a contract with a city to build a sewer which bound him to protect underground pipes and providing for damage resulting from carelessness in laying the sewer to be recovered by the parties damaged. The contractor made a contract, for a consideration named, with a third person that he would use additional care in laying his sewer in a certain alley so as not to injure certain underground pipes owned by the third person, which contract made it necessary to use additional care and incur additional expense in laying the sewer. *Held*, the contract with the third person was supported by a valuable consideration.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

REVERSED AND REMANDED.

*Daniel Dillon* for appellant.

The obligations and liabilities of plaintiffs under the contract sued on were very different from and much broader and more extensive than under the contract with the city.   Bank v. Graham, 74 Mo. App. 256; Houck v. Frisbee, 66 Mo. App. 21; Wulz v. Schaeffer, 37 Mo. App. 551.

*McPheeters & Burkham* for respondent.

A promise made in the consideration of the doing of an act, which the promisee is already under an obligation to a third party to do, is not supported by a consideration.    Lingenfelder v. Brewing Assn., 103 Mo. 578; Johnson's Adm. v. Sellers' Adm., 33 Ala. 265; Ellison v. Water Co., 12 Cal. 542; Havana, etc., Co. v. Ashurt, 148 Ill. 136; Peelman v. Peelman, 4 Ind. 612; Ford v. Garner, 15 Ind. 298; Reynolds v. Nugent, 25 Ind. 328; Ritnour v. Mathews, 42 Ind. 7; Harris v. Cassady, 107 Ind. 158; Brownlee v. Love, 117 Ind. 420; Beaver v. Fulp, 136 Ind. 595; Schuler v. Myton, 48 Kans. 282; Ford v. Crenshaw, 1 Little (Ky.) 68; Holloway v. Rudy, 60 S. W. (Ky.) 650; Putnam v. Woodbury, 68 Me. 58; Ogden v. Ogden, 1 Bland (Md.) 284; L'Amereux v. Gould, 7 N. Y. 349; Gerlach v. Steinke, 22 Alb. L. J. 138; Vanderbilt v. Schreyer, 91 N. Y. 392; Seybolt v. Railway, 95 N. Y. 562; Robinson v. Jewett, 116 N. Y. 40; Alley v. Turck, 44 N. Y. Supp. 433; Arend v. Smith, 151 N. Y. 502; Sherwin v. Brigham, 39 Ohio St. 137; Hanks v. Barrow, 95 Tenn. 275; Kenigsberger v. Wingate, 31 Tex. 42; Davenport v. Society, 33 Wis. 387.

GOODE, J.—This action was to recover the amount of $400 alleged to be due plaintiffs by the following contract:

"St. Louis, Mo., May 30, 1905.

"Fred Hoffman & Co.,

"301 Benoist,

.St. Louis, Mo.

"Gentlemen: We have this day made the following contract with your Mr. Hogan. In consideration of the payment to you of $400, you contract and agree so to contruct the sewer you are about to build in the alley between Pine and Olive and Twelfth and Thirteenth streets, running north, that it will not affect or cause to settle our conduit that at present is located in the alley, according to the tracing we have this day given to your Mr. Hogan; and you further agree that if, in constructing this sewer, you do cause us any damage, that you will pay all losses to which we are put by reason of the damage.

"The $400 is to be paid to you when you have finished the sewer and the same has been accepted by the city of St. Louis.

"It is understood that your acceptance of this contract is on the condition that the board of public improvements shall stake out the sewer west of our conduit.

"If you are prepared to confirm this contract please sign and return to us one copy of this letter, which is issued in duplicate, you retaining the other.

"Yours truly,

"ST. LOUIS REFRIGERATOR & COLD STORAGE CO.,

"Accepted: "T. S. MCPHEETERS, President.

"FRED H. HOFFMAN & CO.,

"T. F. HOGAN."

The action was originally instituted before a justice of the peace and a statement filed which, after declaring on the instrument just copied, averred that plaintiffs constructed and finishel the sewer between Pine and

Olive and Twelfth and Thirteenth streets in the city of St. Louis, so that the work did not affect defendant's conduits or cause them to settle; that after the sewer was finished, it was accepted by the city and plaintiffs subsequently demanded payment of the $400 from defendant and defendant refused to pay. The case went to the circuit court on appeal and when called for trial in that court, one of the attorneys for defendant stated to the jury that defendant admitted Mr. Hogan (one of the plaintiffs) was to be paid $400 for taking care that defendant's pipes were not injured; admitted that when the sewer was built and plaintiffs called on defendant for their money, defendant refused to pay because its mechanical department, on investigating the ground in which the sewer was built, discovered several large holes which endangered the pipes; that thereupon defendant agreed to pay the $400 if plaintiffs would give a bond to secure the payment of any damage which might happen, which the plaintiffs refused to do. The attorney further stated that the work had not been performed as the contract provided; that the testimony would so show and if it did, the verdict should be for defendant.

Plaintiffs were under contract with the city of St. Louis to lay a large sewer pipe in an alley. The defendant had three conduits or pipes laid in the alley about three feet below the surface. One of those pipes was filled with ammonia, one with ammonia gas and the other was a vacuum to be used if either of the others got out of order. The pipes were employed in connection with the system of refrigeration furnished to various business establishments in the city; among others the Jefferson Hotel. Defendant's pipes carried a pressure of one hundred and twenty-five to one hundred and eighty-five pounds, and the testimony goes to show that if they sagged it would be easy for the ammonia or ammonia gas to escape. The sewer was to be constructed seventeen feet below the surface of the alley and fourteen feet below defendant's pipes. The tes-

timony of defendant's president was that after plaintiffs had finished the work and demanded their money, he ordered a check to be sent them, but before this was done defendant's mechanical department reported that the work was defective; wherefore defendant demanded a bond of $800 before it would pay and plaintiffs refused to execute the bond, contending they were not required to do so under the contract. The evidence is that plaintiffs are financially responsible. Some of defendant's workmen testified that on examining the sewer they found three cavities above it; one eighteen or twenty feet long and from one to to two feet high, another about four feet square and a foot below defendant's pipes and a third two and a half feet long, two inches wide and six feet deep underneath and alongside the pipes; that the cavities below the conduits would cause the latter to settle. Evidence was given for plaintiffs tending to show there were no such cavities and that the sewer was put in so as to safeguard defendant's conduits. There was a conflict of evidence on this question presenting an issue of fact for the jury. The court directed a verdict for defendant, doubtless in consequence of another defense. The contract between plaintiffs and the city of St. Louis for laying the sewer contained this clause:

"Whenever underground pipes or conduits, either public or private, are encountered during the progress of the work, the contractor shall sustain them by timber and chains, or otherwise, so as to keep them in position and free from injury. Any damage to underground pipes, or conduits, resulting from any work done under this contract, from any neglect or carelessness of the contractor, may be repaired by the proper party, and the costs thereof shall be paid by the contractor on demand, and in default of payment may be recovered by said party in any court of competent jurisdiction, of the contractor and his securities, or any one of them hereunder; or if the claim is for work done by the city of

St. Louis, no certificate of the completion of the work done under this contract shall be given by the sewer commissioner until payment is made."

There were other clauses in the city's contract providing in substance, that plaintiffs should be governed by the orders of the city sewer commissioner, who should have the right to determine the amount, quantity and classification of the several kinds of materials to be paid for under the agreement with the city, and to decide all questions in relation to the agreement; that plaintiffs should give a bond with the National Security Company, as surety, in the sum of more than six thousand dollars, conditioned that, in the event plaintiffs faithfully performed their work according to contract with the city and paid all proper parties for materials and labor used, the obligation should be void; otherwise should remain in full force and to be sued on in the name of the city at the instance of any materialman, laborer or mechanic who was injured by a breach of its conditions. The theory on which the verdict was ordered for defendant was, that the contract between plaintiffs and defendant bound the former to do no more than they were reasonably bound to do under their contract with the city and, hence, there was no consideration for defendant's agreement to pay $400 if the work of laying the sewer was performed so as not to affect defendant's conduits or cause them to settle.

Further reference needs to be made to the testimony regarding the execution of the contract in suit. One of the plaintiffs testified that when they went to excavating for the sewer, they found defendant's pipes in the center of the street instead of at the side as they expected and as the plat of the pipes filed with the city showed; that the pipes were full of ammonia and ammonia gas and plaintiffs requested defendant to abandon the use of them temporarily until the sewer was laid, because, if a conduit was broken, the gas would endanger the lives of the men digging in the sewer ditch; that

defendant declined this request because it was supplying the Jefferson Hotel and needed to operate the conduits constantly; that several interviews occurred between plaintiffs, defendant's president and the city sewer commissioner, with the result that plaintiffs agreed to excavate for the sewer on the other side of the alley from defendant's pipes instead of in the center; that laying the sewer on the side of the alley cost plaintiffs more than laying it in the center would have cost; also that the sewer had to be laid near buildings which abutted on the alley and plaintiffs were exposed to damage suits caused by the ground settling and damaging the buildings; that these considerations were all discussed with defendant's president and entered into the contract in suit.

Judgment having been entered for defendant, plaintiffs appealed.

The position taken by defendant's counsel is that the contract in suit is unsupported by a consideration because it imposed no greater responsibility on plaintiffs than they were under already by virtue of their contract with the city of St. Louis. We refrain from passing on the question of whether a promise to do what the promissor is already under a legal obligation to do by virtue of a prior contract between him and a third party, is a good consideration for an undertaking by the promisee to compensate him for doing the thing agreed — whether or not under those circumstances, an action will lie on the promisee's obligation. This is a question on which the authorities are in conflict. In our judgment it is not true in the case at bar that plaintiffs assumed no greater responsibility and duty to defendant regarding its pipes, than they had assumed in the contract with the city; and by every authority we have found, if the agreement in suit was more detrimental to plaintiffs than the agreement with the city was, or put them under a broader obligation, there was a consideration for defendant's undertaking to compensate them. [Pollock,

Contracts (7 Ed.), p. 185.] The city contract bound plaintiffs to sustain by timbers, chains or otherwise, and so as to keep them from being injured, any underground pipes they might encounter while laying the sewer, and also provided that if any damage resulted to such pipes from plaintiffs' carelessness in laying the sewer, the damage might be repaired by the proper party and the cost of repairing recovered of plaintiffs or their surety. Perhaps the city contract was so far intended for the benefit of defendant that defendant had a right of action on it against plaintiffs and their surety. Granting that this is true, it is obvious that in such an action defendant could have recovered no more than the cost of repairing the pipes, and this only in the event that they were damaged by plaintiffs' failure to support them, or to use ordinary care in some other particular. But the contract in suit does not limit the recovery for loss suffered by defendant in consequence of a breach of it, to the cost of repairing defendant's pipes; and neither does it restrict plaintiffs' liability to a failure to support the pipes or to damage done to them by lack of care in some other respect. The agreement with defendant bound plaintiffs to put in the sewer in such a way that it would not effect the conduits or cause them to settle; and further bound plaintiffs to make defendant whole for all loss sustained in consequence of damage to the pipes. Such damage might have entailed a greater loss than the cost of repairs; might have suspended the use of the pipes for a time, or have caused other losses of a proximate sort; all of which would have been within the indemnity provided by the contract. Nor is it material, under the present contract, that an injury resulting to defendant's pipes from laying the sewer was not due to a failure to support the pipes or to carelessness. Plaintiffs were under liability for damage resulting to the pipes in any way, if it was a consequence of their work. If they supported the pipes and used ordinary care in laying the sewer, but nevertheless the pipes

were damaged in some way, plaintiffs still would have been liable for the loss entailed on defendant; at least, if it was possible to prevent the damage. Plaintiffs' obligation under the contract in suit was not merely to use ordinary care and to support the pipes with timbers, chains or otherwise: It was to put in the sewer in such a manner that defendant's pipes would not be affected by the work, and to answer for any loss occurring in consequence of their being affected. Now defendant could not contract for this higher degree of protection and then set up lack of consideration for the promise to pay for it. Moreover, there was testimony to show that, in order to carry out the agreement in suit and absolutely safeguard defendant's pipes, plaintiffs were compelled to divert the sewer to the west side of the alley at considerable expense over what would have been the cost of laying it in the center of the alley, as they had a right to do under the contract with the city. This was a detriment to plaintiffs and furnished a consideration for the agreement, independent of the enhanced protection afforded defendant. The real issue to be tried was the one stated by defendant's counsel, namely; whether the sewer was so constructed as not to affect defendant's pipes or cause them to settle. We have read most of the numerous authorities cited by defendant and find that none of them holds such an agreement as we have before us to be a nude pact. To do so would be to take a radical departure from the principles of contract law.

The judgment is reversed and the cause remanded. All concur.